ERNEST L. JORDAN *vs.* ABRAHAM GOODSIDE.

Cumberland.   Opinion December 21, 1923.

*A holder of a note given as collateral security is a holder for value, under the Uniform Negotiable Instruments Act, thus abrogating the former doctrine in this State.*

The doctrine formerly held in this State that the holder of a note given merely as collateral security for a preexisting debt, without parting with any right or extending any forbearance or giving any new consideration, is not to be regarded as a holder for value, has been abrogated by Section 25 of the Uniform Negotiable Instruments Act. The plaintiff in this case is a holder for value.

The plaintiff is also a holder in due course before maturity and without notice of any infirmity. The mere lack of an Internal Revenue stamp did not render the instrument incomplete or irregular on its face within the meaning of the Negotiable Instruments Act.

In the instant case the questions of fact were found by the presiding Justice, and his findings were conclusive.

On exceptions by defendant. An action of assumpsit on a promissory note given to plaintiff as collateral security. The case was tried without the intervention of a jury and the presiding Justice found

for the plaintiff.    Defendant excepted to rulings denying requested rulings, and also excepted to certain rulings made in matters of law. Exceptions overruled.

The case is sufficiently stated in the opinion.

*Bradley, Linnell & Jones,* for plaintiff.

*I. E. Vernon, J. E. F. Connolly and H. C. Libby,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

CORNISH, C. J.    Action of assumpsit on a promissory note of the following tenor:

"Portland, Me., Dec. 28, 1920.

$5,000.

Four months after date I promise to pay to the order of Charles J. Clukey four thousand dollars at any bank in Portland, Maine, or State of Maine.

No...................... Due....................    A. GOODSIDE."

(On the back)    "CHARLES J. CLUKEY
5/21/21  Rec'd on
within note $500. and
interest to date."

The case was tried before the Justice of the Superior Court of Cumberland County without the intervention of a jury and he rendered judgment for the plaintiff in the sum of $5,017.50 at the April Term, 1923.

The presiding Justice in his decision found the following facts among others: that one Charles J. Clukey was connected in some official capacity with the W. E. Soule Company, a corporation operating a garage and doing a general automobile business, and the plaintiff was an employe of the company. Being desirous of raising funds, Clukey procured the plaintiff to make a note dated February 20, 1920, payable to his (Clukey's) order for the sum of eight thousand dollars, which note Clukey caused to be discounted and it finally came into the hands of the Ticonic National Bank at Water-

ville. At the time of making this note Clukey promised the plaintiff to give him something for his protection in case anything happened to him (Clukey).

On December 28, 1920, by way of fulfilment of this promise, Clukey gave to the plaintiff the note in suit, of which the defendant Goodside was the maker and Clukey the payee. "This note was endorsed by Clukey, the payee, and was given by him to the plaintiff before maturity. It bears no U. S. internal revenue stamp, for what reason the testimony does not disclose. At the time this note was given to the plaintiff by Clukey the plaintiff had no notice of any defect in Clukey's title thereto nor does it appear that there was any such. Divers payments were made to the Ticonic National Bank by Clukey, or at least by parties other than the plaintiff, upon plaintiff's note above mentioned, until the amount due thereon appears to have been a little less than five thousand dollars, when suit was brought by the bank against the plaintiff, and judgment recovered thereon at the January Term, 1923, of the Kennebec Superior Court. This suit was commenced long after the delivery of the Goodside note to the plaintiff by Clukey."

The presiding Justice made certain rulings and denied certain requests for rulings offered by the defendant, to all of which exceptions were duly taken. These contentions, all of which are governed and controlled by the Negotiable Instruments Act, Public Laws 1917, Chapter 257, may be condensed as follows:

1. That the plaintiff was not a holder for value.

The presiding Justice found as a fact that at the time when Jordan executed the $8,000 note for Clukey's accommodation and benefit Clukey then and there promised to protect him, and this note in suit given by Goodside to Clukey ten months later and indorsed by Clukey to Jordan fulfilled that promise. That promise had a valid executed consideration. It was made at the time of the original transaction and the fact that it was not carried out until ten months later does not affect its legality or validity.

The defendant urges that the plaintiff took this note merely as collateral security for a preexisting debt, without parting with any right or extending any forbearance or giving any new consideration, and therefore is not to be regarded as a holder for a valuable consideration under the decisions in this State, citing *Bramhall* v. *Beckett*, 31 Maine, 205; *Nutter* v. *Stover*, 48 Maine, 163; *Smith* v.

*Bibber,* 82 Maine, 34. In this last named case the court declared that were the question a new one in this State they would be inclined to adopt the contrary rule, which was that of the Federal Court and of most other jurisdictions, but they adhered to the doctrine established here.

However, this doctrine has been abrogated by the Negotiable Instruments Act, Section 25, which provides: "Value is any consideration sufficient to support a simple contract. An antecedent or preexisting debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time." This changed rule was applied in *Merrill Trust Co.* v. *Brown,* 122 Maine, 101, a case decided after the passage of the Negotiable Instruments Act, and is now the law in this State. It follows that the plaintiff was a holder for value, even if he took the note as security for a preexisting debt.

2. That the plaintiff is not a holder in due course.

Section 52 defines that term as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

(1) That it is complete and regular on its face;

(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

(3) That he took it in good faith and for value;

(4) That at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Some of these requirements are questions of fact, others of law.

The first condition is that the note be complete and regular on its face. This refers to the conditions and appearance of the note itself, its terms, its execution and its indorsement. These make up the essentials. The affixing of a stamp is no part of the contract between the parties nor of the note. That is a requirement of the government for revenue purposes only, and the cancelled stamp shows that the tax has been paid.

Under the earlier Internal Revenue Acts, prior to that of October 22, 1914, and Act of October 3, 1917, it was provided that unstamped documents should not be used in evidence in any court. Under that provision the almost universal weight of authority held that this

restriction applied to Federal Courts only and not to State Courts, the Congress having no ·constitutional power ·to prescribe rules of evidence for State Courts.· *Wade* v.· *Foss*, 96 Maine, 230; *Wade* v. *Curtis*, 96 Maine, 309, (affirmed in *Mansfield* v. *Gushee,* 120 Maine, 333, 336), *Green* v. *Holway*, 101 Mass., 243; *Moore* v. *Quirk*, 105 Mass., 49; *Cassidy* v. *St. Germain*, 22 R. I., 53; *Garland* v. *Gaines*, 73 Conn., 662. Iowa held a contrary doctrine in its early decisions. *Muscatine* v. *Sterneman*, 30 Iowa, 526; *Mitchell* v. *Home Ins. Co.*, 32 Iowa, 421; *Ricord* v. *Jones*, 33 Iowa, 26.

The Internal Revenue Act of 1914, however, contains no provision as to the ·inadmissibility of unstamped documents in court, *Cole* v. *Ralph,* 252 U. S., 286, and it is this Act of 1914 and that of October 3, 1917, that were in force when the note in question was given.

If, therefore, it makes no difference whether a promissory note be stamped or unstamped so far as its validity and enforceability are concerned, the mere lack of such stamp cannot render the instrument incomplete or irregular on its face, within the meaning of the Negotiable Instruments Act. To so hold would have the effect of rendering an immateriality vital and fatal, and of preventing the enforcement of a note which before the passage of the Act was valid and enforceable. The Act can bear no such construction. The effect of a revenue stamp was not within its contemplation.

Counsel for defendant relies with great confidence upon *Lutton* v. *Baker*, 187 Iowa, 753 (1919) where the court held that a note which lacks the required revenue stamps is not "complete and regular" within the meaning of the Negotiable Instruments Act. This decision on being re-reported in 6 L. R. A., 1701, was criticized by the learned editor in a note as follows:

"The Court in the reported case seems to regard its decision as supported by earlier Iowa decisions to the effect that where the purchaser of a bill or note bearing a revenue stamp knew that such stamp was placed on the note after it was executed and delivered, the omission of the stamp could be pleaded against him, (*First Nat. Bank* v. *Dougherty*, 29 Iowa, 260) and by other cases in which a purchaser of a post-stamped note has been held to be a bona fide holder, and in which his character as such is expressly based upon the fact that he has no knowledge that the note was not stamped until after it was issued (citing cases), notwithstanding that the view in

force in Iowa at the time these cases were decided that the omission of the stamp, even if advertent, invalidated the instrument, was. overruled by later cases."

However, following the Iowa decisions further we find that even that State is receding from its position in *Lutton* v. *Baker*, supra, and is coming into accord with the general trend of authority. In *Farmers Savings Bank* v. *Neel*, 193 Iowa, 685 (1922) after a careful review of the authorities in that and other states, the court distinctly states that it must recede in part from its position in *Lutton* v. *Baker*, and holds that the failure of a maker to cancel revenue stamps placed thereon is not a circumstance tending to impart notice of defects to a prospective purchaser of the note. See same case reported in 21 A. L. R., 1116, and note 1125.

Still later in *Richardson* v. *Cheshire*, 193 Iowa, 930 (1922) the court makes further recession in these words:

"It is sufficient to say at this point that we have recently receded from the position announced in that case as to the effect of such an omission upon the negotiability of a note and the cited case (*Lutton* v. *Baker*), is overruled in that regard. The effect of such holding is to follow the great weight of authority that such an omission is not conclusive upon the negotiability of the note." See also *Solomon National Bank* v. *Birch*, 111 Kan., 283 (1922), where the court declined to follow *Lutton* v. *Baker* and held that the omission of a stamp did not render the note incomplete or irregular under the Uniform Negotiable Instruments Act.

Therefore on both reason and authority we declare that in the case at bar the first condition of a due-course holder has been complied with.

The second condition as to being a holder before maturity without notice of any previous dishonor is a pure question of fact. The presiding Justice so held and his finding is final.

The third condition as to taking in good faith and for value is, as regards good faith, a question of fact which the presiding Justice has conclusively found; as to taking for value, that is a question of law which has hereinbefore been discussed and determined in the plaintiff's favor.

The fourth condition, as to want of notice of any infirmities or defect in title is also a question of fact and the finding of the presiding Justice has settled it.

Various other propositions were raised by the defense in argument, but it is unnecessary to discuss them in detail. It is sufficient to say that there was no error in the rulings of the presiding Justice, that the plaintiff is entitled to his judgment, and the entry must be,

*Exceptions overruled.*